## HOYT *v.* MACON.

PRACTICE — *service of process to warrant default.* Upon service of process within ten days of the return day, judgment of default cannot be entered on the first day of the second term. The defendant has all of that day in which to appear and plead.

PROBATE COURTS — *terms of.* By the act of March 3, 1865 (R. S. 527), terms of probate courts for the exercise of civil jurisdiction in matters not strictly relating to intestate estates, testamentary matters, and the like, were appointed to be held on the first Mondays of alternate months, commencing with February.

APPEARANCE — *which will support a judgment of default.* An affidavit for continuance filed by a defendant is not such an appearance as will warrant the entering of judgment of default.

CASE — *for maliciously resisting application to enter public lands.* An action on the case may be maintained against one who maliciously, and without probable cause, attempts to defeat a claim to public lands made in good faith, under the pre-emption laws of the United States.

PLEADING — *what must be averred in the declaration.* In such action, the plaintiff must aver that he is an applicant for the land under the pre-emption laws, and show what steps he has taken to obtain it.

*He should also* set out in his declaration the acts of the defendant of which he complains, and show in what way the defendant hath intermeddled with his right.

JUDGMENT OF DEFAULT — *will not cure substantial defects.* And where this was not done, the defects will not be cured by default and inquest of damages. The rule that defects in a declaration may be cured by a verdict is not applicable to a case of default which admits such facts only as are actually alleged.

## Error to Probate Court, Fremont County.

ACTION on the case brought to the December term, 1871, of the probate court of Fremont county, which convened December 4th. The summons was served November 27, and the declaration was filed January 24, 1872, and was as follows:

"Augustus Macon, the plaintiff, complains of Samuel N. Hoyt, the defendant, of a plea of trespass on the case. For that, whereas, the said plaintiff, before and at the time of the commencement of this suit and proceedings, in the land office of the United States, at Denver, in said territory hereinafter next mentioned, had not committed any fraud in making the entry, by pre-emption, of the east half of the south-west quarter of section thirty-three (33), in township eighteen (18), south of range seventy (70) west, nor was in any wise subject or liable to have said entry impeached, annulled, or canceled, for any fraud or malfeasance of him, the said plaintiff therein, according to the course and practice of the land office of the United States.

Yet the said defendant well knowing the premises, and that the said plaintiff had made the said entry of the said land in good faith, and in compliance with the require-

ments of the statutes of the United States in such case made and provided, but falsely, wickedly and maliciously contriving and intending to injure, aggrieve and oppress the said plaintiff, and to bring him into great disgrace with and among his friends, neighbors and acquaintances, and other good and worthy citizens, and to put him, the said plaintiff, to great expense of his moneys and estate, and falsely and maliciously to cause and procure the said plaintiff to pay to him, the said defendant, large sums of money to be quit of the after-mentioned writ and proceedings, and to impoverish and wholly ruin him, the said plaintiff heretofore, to wit: On the 8th day of October, A. D. 1869, at the county of Fremont, and Territory of Colorado, under pretense that the plaintiff had made the entry of said land fraudulently and without right within the meaning and intent of the Laws of the United States, made and then in force concerning entry of lands by pre-emption, falsely, maliciously, and without any reason or probable cause whatever, sued and prosecuted, and caused and procured to be sued and prosecuted, before the commissioner of the general land office of the United States, an officer having jurisdiction in the premises, a caveat, impeaching the plaintiff's said entry on the ground and allegation of fraud, by reason of which caveat and the allegations therein contained, the said commissioner, according to the course and practice in his said office, suspended said entry and remanded the same to the local land office at Denver, aforesaid, with orders to the register and receiver of the said local land office at Denver aforesaid, to investigate the said entry of the plaintiff upon the charges and allegations in the said caveat contained.

And afterwards, to wit: On the 31st day of January, A. D. 1871, after due notice by them to plaintiff to appear at said local land office at Denver aforesaid, and show cause why his said entry should not be revoked, the said register and receiver of the said local land office at Denver aforesaid, in pursuance of said order of and from the said commissioner of the general land office of the United States,

did then and there have and hold an investigation and trial of said entry of plaintiff, when and where such proceedings were had, that the said suit, under color and pretense of said caveat, was determined, and the said entry of plaintiff was affirmed according to the course and practice of the local land department of the United States, by reason of which proceeding and rulings aforesaid, the president of the United States afterward, to wit: On the 11th day of April, A. D. 1870, executed and delivered to the plaintiff a patent for the land so entered by plaintiff as aforesaid, and the said suit and proceedings were and are by means of the premises wholly discharged, ended and determined.

By means of which said several premises, the said plaintiff, whilst he was so defending the said suit under color and pretense of said caveat as aforesaid, not only suffered great pain and anxiety of mind, and was greatly exposed and injured in his credit and circumstances, and was hindered and prevented from performing and transacting his lawful affairs and business by him during that time to be performed and transacted, but was also forced and obliged to pay, lay out and expend, and did necessarily pay, lay out and expend, divers large sums of money in and about defending said suit and proceedings aforesaid, in the whole amounting to the sum of $2,000, and in and about the premises, whereby he hath been and is greatly injured and damnified, to wit: at the county of Fremont, and Territory of Colorado, whereupon he brings suit.

On the 5th day of February, A. D. 1872, which was the first day of the February term of the court, judgment of default was entered against the defendant, and the cause was referred to a jury to assess damages.   On the same day defendant filed an affidavit for continuance, as to which on the next day, being the sixth of February, the court made the following order: "This day came the said plaintiff by E. Bass and Thomas Macon, his attorneys, and on their motion it is ordered that said defendant's affidavit for a continuance of this cause be ruled out, as the same was filed after the order of this court was made herein on yesterday." Dam-

ages were assessed at $1,974, for which sum, together with costs, judgment was rendered.

Messrs. FRANCE & ROGERS, for plaintiff in error.

Messrs. O. & A. S. BLAKE, for defendant in error.

WELLS, J.　It was held in *Hoehne* v. *Rupear*, 1 Col. 405, that judgment for default of appearance, or for want of a plea, cannot be given on the first day of the return term of the process.　In the present case the summons was served less than ten days before the return day ; the cause was continued and the default was entered on the first day of the second term.　A different question is therefore presented than in the case cited.　By the fifth section of the practice act (R. S., ch. LXX), made applicable to the probate court, by the act of March 11, 1864 (R. S., ch. LXXI, § 28), it is provided that if the sheriff, or other officer to whom summons may be directed, shall be unable to serve the same ten days before the return day, he may make service thereof at any time before or on the return day, but in such case it is provided "the defendant or defendants shall be entitled to a continuance and shall not be compelled to plead before the next succeeding term."

It appears to me that the effect of this provision is that the cause shall stand continued to the second term in the same condition as if commenced to that term.　The phraseology used only goes so far as to repel the idea that the plaintiff shall be required to *plead* before the second term, and it is not inconsistent with this to say that he must *appear* at the first term, but this, it has been expressly determined, is not required.　*Pattison* v. *Hood*, 3 Scam. 152. And it would seem that if the defendant is not required to appear during the first term he should be allowed all of the first day of the second term in which to interpose both his appearance and his plea.　Any other construction of the statute will require that not only the appearance but the defendant's plea shall be interposed at the furthest, by the first moment after the court convenes at the second term.

If the plaintiff may exact a plea at the last hour of the first day, or, in default, have judgment *nil dicit*, he may do so at the first moment of that day at which counsel can be heard. If he apply for it at any time before a plea is actually filed, though but the moment after the court is opened and proclamation made, the plaintiff will in strictness be entitled to have his judgment entered even though the defendant should then be prepared to plead on the instant.

Practically, the result would be to require the defendant to plead before the second term, which the statute forbids.

Moreover, this further incongruity is to be noted as resulting from the construction contended for, that while, if service be had to the first term, and the declaration is filed ten days before the term sits, the defendant has the whole of ten days preceding the term, and the first day of the term, in addition, in which to prepare his defense, and interpose the same, if service be had to the first term, but not in time, and the plaintiff file his declaration only ten days before the second term, as he may do, the defendant, without his own default, is deprived of one day of the period allowed to him in the other case.

No controlling reason can be assigned why a shorter day should be allowed in one case than in the other. It was contended on the part of the defendant in error, that the judgment was, in fact, taken at the third term, and reference was made to the 6th section of the act of November 7, 1861. R. S., ch. LXXI. But when this statute was passed, the probate court had no civil jurisdiction except in testamentary and intestacy matters; and when this jurisdiction was added by the amendment to the act of congress of March 2, 1863, the legislature, by the act of March 11, 1864, which was intended to regulate the exercise of the new jurisdiction, provided for terms of the court at the same time, "as now provided by law for the transaction of probate business." By the act of February 8, 1865, however, which professes to be an amendment of that of March 11, 1864, the terms of the probate court are limited to six, to be held on the first Mondays of alternate months, commencing with

February; for the exercise of their civil jurisdiction, therefore, in matters not strictly relating to intestate estates, testamentary matters, and the like, that court has no term in the month of January, and the default in this case must be regarded as a default taken at the second term. It was argued on the part of the defendant in error, that to sustain the judgment below, this court may, and should, presume that the rules of that court warranted what was done. But if we are correct in the interpretation of the statute, the plaintiff has, by positive enactment, the whole of the first day of the term in which to appear and plead; and clearly a right so reserved, and evidenced, cannot be restricted or taken away by rule of court. On the first day of the February term, the plaintiff in error filed in the court below, an affidavit for a continuance, which was afterward stricken off. Counsel on both sides agree that hereby a general appearance was entered; and for the plaintiff in error it is claimed that this occurred before default taken, and therefore the default was irregular; while for the defendant in error it is contended that the appearance having been entered after the default taken, any irregularity in the former proceedings was cured. We are of opinion that the mere filing of the affidavit, whether before or after the continuance, was nothing.

The affidavit was not a pleading nor a motion, but mere evidence to be used in support of the motion for continuance if one should be made. Of itself it had no effect whatever. *Morrell* v. *The People*, 32 Ill. 501. The conclusion to which we arrived on the first point seems to render it unnecessary to consider the questions which were raised as to the sufficiency of the declaration. Inasmuch, however, as these questions were very ably argued before us, and will probably be presented in the probate court, it seems to be best that we should consider them now. The action of the plaintiff below has been spoken of in argument as case for a malicious prosecution. The case made by the declaration, however, is an anomalous one. The proceeding which it is said the defendant caused to be set on foot against plaintiff,

is strictly not a suit or action. The plaintiff was seeking to have advantage of the provisions of the statute of the United States, which permit certain classes of persons in certain specified cases to purchase a part of the public domain in preference to other citizens; any private citizen had the right to intervene and resist the proceeding at any stage, for the pre-emptioner was asserting a claim in hostility to the common right. In strictness, therefore, the acts with which the defendant is charged in the present declaration amount not to a malicious prosecution of a suit; the attitude of the defendant was defensive throughout, and he cannot be said, in any sense, to have instituted a suit. If we look to their effect upon the rights of the pre-emptioner, however, the proceedings which it is said that the defendant below set on foot, were not different from a bill in chancery to set aside the pre-emption entry, after patent issued. In the case last supposed, it cannot be doubted, we think, that if instituted maliciously and without probable cause, the complainant's unwarrantable and vexatious proceedings might lay the foundation for an action upon the case against him. And upon principle I conceive no distinction ought to be made between the case where one, out of malice merely, and without probable cause, sets in motion the machinery of the law to the injury and oppression of his neighbor, and that other class of cases where one from the same motive unwarrantably interferes in a matter in which he is not directly a party, to delay or prevent another from obtaining that to which he is entitled. It is true that the defendant here was in some sort a defendant to the proceedings for pre-emption, but he was so in no otherwise than every other citizen, and to say that any citizen at any time before patent issued may, without cause, and out of mere malice, interfere to resist the pre-emptioner's application, and shall not be liable over for the damage occasioned by his wrong is, it appears to me, going far to impair the value of the privilege which the bounty of congress has extended. If one citizen may so intermeddle and, by a false suggestion that the pre-emptioner is not the head of a family, compel

him to attend with his witnesses to establish his qualification in this respect, another may compel him to renew the same journeyings and expenses by a like suggestion against his citizenship, and a third by questioning his settlement, and others upon other grounds; and so if the pre-emptioner be of that class for whose especial benefit the statute was framed, it may well be conceived that he will eventually be compelled to abandon his right from sheer exhaustion.

I think, therefore, that it ought not to be said that one may intermeddle to resist his neighbor's application to have the benefit of the act of congress, out of mere malice and without cause, and not be liable over for the wrong.

3. The question, whether the cause of action relied upon is sufficiently stated, remains. 1st. It may be inferred from the declaration that the plaintiff below had, before the institution of the proceedings of which he complains, made application to enter, under the pre-emption acts, the lands which are described ; but it is nowhere directly averred, and in this respect we think the declaration is defective ; for, if the plaintiff had never made such application, and made no claim to a pre-emption right in these lands, it was his own folly to expend time or money in the investigation of the defendant's allegation against a claim attributed to, but never asserted by him. 2d. The declaration nowhere shows with what particular acts the defendant is sought to be charged. It is averred that " under pretense that the plaintiff had made the entry of said land fraudulently, and without right, etc., he, the said defendant, falsely, etc., sued and prosecuted, and caused to be sued and prosecuted before the commissioner of the general land office of the United States, an officer having jurisdiction, etc., a caveat, impeaching the plaintiff's said entry, on the ground and allegation of fraud," etc.

But whether the suggestion interposed by the plaintiff in error was against his settlement, or against his qualifications in some respect ; or upon the ground that he had settled and sought to pre-empt for the benefit of another, is not shown ; and, therefore, while what is alleged may

include many things, the defendant is not advised thereby. in what particular respect it is sought to show that he has wrongfully intermeddled with rights of the plaintiff. And this, we think, ought to be shown, for the plaintiff's action may be defeated by showing, either that the defendant never made the suggestion against the plaintiff's right, with which it is sought to charge him, or as it would seem, clearly, by showing that he had probable cause to believe his suggestion, whatever it was, to be true; but unless it be averred of what particular suggestion against the plaintiff's right it is proposed to show he has been guilty, the defendant can neither traverse, nor confess and avoid; nor whatever his defense may be, can he understandingly prepare himself with proofs to establish it.

And this seems to us to agree with the established precedents in the actions most analogous to the present, e. g., in case for maliciously charging the plaintiff of felony, and causing him to be imprisoned thereon, the declaration sets forth, with particularity, the charge which was made before the magistrate (2 Ch. Pl. 607*, 12th Am. ed.); and it is doubted whether a count averring a charge of felony merely, would suffice. Id. 611*, n. (d.) In case for maliciously causing the plaintiff to be arrested in a civil action, the particulars of the command of the writ are recited. Id. 600*; id., p. 611. In case for maliciously and wrongfully suing out an attachment, the precedents in common use set forth, it is believed, the substance of the affidavit upon which the writ issued. In case for a libel, the words published are always set forth; and this latter instance appears to have much analogy to the present case, for in that action the substance of the charge is, that defendant, by the publication of a falsehood respecting the plaintiff, hath injured him in his reputation; and here it is that by the false allegation against the plaintiff's right in a particular respect, he hath injured him in his estate.

It was argued that by the verdict, as it was called, all the defects in the declaration are cured. In Mr. Gould's work on Pleading, it is said that "The ground or principle

on which any fact not alleged is to be presumed in support of a general verdict is, that as the verdict must be considered as true, and as founded on legal evidence exhibited at the trial, the court, which can judge only from the record, must presume in support of it, that any and every fact not alleged, the proof of which was necessary to justify the jury in finding as they have done, was proved to them on the trial." Ch. X, § 14.

And if this be a correct exposition of the principle upon which intendments are indulged to supply omissions in pleading after judgment, the principle has clearly no application in the present case; for here there was no issue upon the declaration, and no finding by the jury as to any allegation contained therein; the judgment proceeding solely upon the confession which the law implies from the defendant's default. And this agrees with what is said in the same work before cited. Ch. X, § 26. "A default cures no defect in the declaration, which would not have been cured on general demurrer, for no fact can be presumed to have been proven where no trial has been had, and no proof exhibited."

And in another work of equal authority, it is said "that a judgment by default admits such facts only as are actually alleged." Ch. Pl. 673*.

Upon these authorities, therefore, it cannot be said that the inquest of damages had in the probate court can have the effect of a verdict, and supply by intendment what the plaintiff has omitted to aver; and if in any case an intendment of law can avail to support a judgment given by default, it must be upon some other principle than that here invoked.

The judgment of the probate court is reversed, and the cause will be remanded for further proceedings according to law.

*Reversed.*